241 So.2d 238 (1970)
256 La. 1110
John L. SWOPE et al.
v.
ST. MARY PARISH SCHOOL BOARD.
No. 50450.
Supreme Court of Louisiana.
June 29, 1970.
On Rehearing November 9, 1970.
Dissenting Opinion November 19, 1970.
*239 Tucker & Schonekas, Gibson Tucker, Jr., New Orleans, for plaintiff-relator, petitioner.
Knowles M. Tucker, Dist. Atty., Bernard E. Boudreaux, Jr., Asst. Dist. Atty., for defendants-respondents.
Jerris Leonard, Asst. Atty. Gen., David B. Marblestone, Atty., U. S. Dept. of Justice, Donald E. Walter, U. S. Atty., for intervenor.
HAMITER, Justice.
This is a mandamus proceeding in which the relators, who are citizens and residents of St. Mary Parish, seek to compel the district court of such parish to hear and determine an injunction suit filed by them therein, although the action was ordered removed to the United States District Court, Western District of Louisiana, by a decree of the latter.
The facts and circumstances preceding the filing of the present petition for certiorari and mandamus are as hereinafter set forth.
On August 31, 1965 certain citizens of St. Mary Parish instituted a class action in the United States District Court, Western District of Louisiana, against the parish school board, they alleging therein that the board was maintaining racially segregated schools in violation of the Fourteenth Amendment of the federal constitution; and they sought an order which would effect desegregation of the school system. Ultimately, the federal court, on August 4, 1969, entered an order directing the desegregation of the schools and also decreeing that the board follow a certain plan set forth by it. Boudreaux v. St. Mary Parish School Board, 5 Cir., 417 F.2d 801.
On September 3, 1969, these relators filed the injunction suit above referred to in the state district court (the Sixteenth Judicial District Court of St. Mary Parish), naming as the defendants the St. Mary Parish School Board and the members thereof. Therein they alleged that:
"Defendants, pursuant to a decree of the United States District Court * * * *240 have prepared and have submitted to said court a plan * * * for the reorganization of the public school system within their jurisdiction * * * which said plan was accepted by an order of the court dated August 8, 1969, and petitioners allege that unless restrained and enjoined by judgment of this court, said defendants will proceed to the implementation of said plan, which said plan is illegal and unconstitutional as applied to the petitioners and other similarly situated in the following respects." The petition then set forth the alleged grounds for illegality of the plan, among them being that it violates the laws of the United States [The petition cites: "* * * particularly, 42 U.S.C.A. Sections 2000C(B), 2000C-2 and 2000-6(A), * * *."] and the equal protection clause of the Fourteenth Amendment of the United States Constitution.
The prayer sought a temporary restraining order enjoining the board from implementing the "plan of reorganization * * which was filed in the United States District Court * * * and accepted by said court by order of August 8, 1969 * * *," and asking that a rule nisi issue to the defendants to show cause why a preliminary injunction should not be decreed in the form and manner of the temporary restraining order. The petition concluded with the further prayer that, after due proceedings, a judgment be rendered "declaring the plan of reorganization to be illegal and unconstitutional, and enjoining the said defendants from the implementation thereof by any act whatsoever."
The state district judge denied the request for a restraining order, but he ordered the school board to show cause on September 12, 1969 why the preliminary injunction should not issue as prayed for.
The school board and its members answered alleging that they had done everything possible to oppose the action of the federal government and its various agencies in abolishing the freedom of choice method of operation of the schools within their district and that they will do "whatever is necessary in these premises." They prayed that the court "render such orders as justice and reason demand."
On September 9, 1969 the United States government, through the attorney general, sought and obtained the right to appear in the Boudreaux matter as intervenor and, as such, to submit pleadings, evidence, arguments and briefs; to move for injunctive and other necessary and proper relief; and to initiate such further proceedings as might be necessary and appropriate. On the same day, it obtained from the federal district court an order of removal of relator's injunction suit to that court and have it consolidated with the Boudreaux case. The federal court also issued an order vacating the preliminary hearing set in the state court.
Although we do not find in the record any formal order of the state district judge removing the injunction suit to the federal court, the minutes of September 10, 1969 reflect that the hearing on the rule nisi was vacated in accordance with the federal court directive, and that relators' counsel were notified of the action.
Thereafter, with respect to such suit, these relators filed in the federal district court a "motion to remand and to recall stay order." Therein, they alleged that the petition for removal did not comply with the provisions of the Judicial Code for effecting a removal; that the federal court was without jurisdiction of the action; and that it had no authority to vacate the state court's order.
On October 29, 1969, following a hearing, the federal court denied the motion to remand and to recall the stay order "for the reasons set out in the Evangeline Parish case." The ruling further said that it gave relators fifteen days to file a petition of intervention in the federal court. Then, in accordance with federal practice and procedure, the matter was certified for appeal.
*241 Relators neither filed the intervention nor did they appeal from the ruling of the federal court refusing to remand the case to the state court. And on motion of the United States, the federal court (on February 26, 1970) ordered the relators' suit dismissed for failure to comply with its order of October 29, 1969 which permitted such intervention, stating that it is a "final judgment under Rule 54(b), F.R.Civil P., subject to appeal." No appeal was taken from this judgment.
Meanwhile, the relators sought a writ of mandamus from the Louisiana Court of Appeal, First Circuit, seeking the same relief it prays for in the proceedings presently under consideration. But on February 11, 1970 that court denied the writ stating that "This court has no jurisdiction, the matter having been removed to federal court."
We are now considering the litigation on writs issued by us on March 30, 1970 (our decision granting the writs was by a four to three vote).
In urging that the state district judge should be compelled to proceed to hear and determine their injunction suit filed in the state court, despite the fact that it has been removed to the federal court, the relators insist that the procedure by which the suit was so removed was irregular and, hence, rendered the removal order an absolute nullity which can be ignored by the parties litigant and by the state courts. The reasons for the nullity of the judgment urged here are the same as those offered by the relators in the federal court in their motion to remand, including the attack on that court's jurisdiction.
Conceding, arguendo, that the procedural and jurisdictional defects of the removal proceeding as alleged by the relators do exist we do not agree that the decrees of the federal court removing the cause and refusing to remand it can be treated either by the parties or by the state courts as absolute nullities such as to render them nonexistent.
Much the same argument was made by the plaintiff in Windholz v. Everett, 4 Cir., 74 F.2d 834, which was a case on appeal to a Federal Circuit Court of Appeals from a judgment setting aside a former decree and remanding the matter to the state court (on the ground that it had been improperly removed because the federal court to which it had been taken did not have jurisdiction of the cause). As in this case, it was urged therein that the lack of the court's jurisdiction rendered the entire proceeding, including the removal, an absolute nullity and of no effect whatsoever. However, the court, holding to the contrary, said: "In the case at bar, the court below, in ordering the cause removed under section 33 of the Judicial Code, passed directly upon the question of its jurisdiction, holding that the case was removable into the federal courts under that section because brought against an officer of a court of the United States. In the light of the decision in Gay v. Ruff, 292 U.S. 25, 54 S. Ct. 608, 78 L.Ed. 1099, supra, this action was erroneous; but the question was one which the court was competent to determine, and its determination thereof, while subject to correction on appeal, was not a nullity. And it is immaterial that the removal was ordered upon a ground which as a matter of law furnished no basis of jurisdiction. This was expressly held in Dowell v. Applegate, 152 U.S. 327, 14 S.Ct. 611, 616, 38 L.Ed. 463, where, after adverting to the contention that the ground upon which the federal court assumed jurisdiction was insufficient in law to make the case one arising under the laws of the United States, the court used language which is conclusive of the point here, saying: `But that was a question which the circuit court of the United States was competent to determine in the first instance. Its determination of it was the exercise of jurisdiction. Even if that court erred in entertaining jurisdiction, its determination of that matter was conclusive upon the parties before it, and could not be questioned by them, or either of them, collaterally, *242 or otherwise than on writ of error or appeal to this court.'"
Decisions of the United States Supreme Court are cited in the opinion of that case, some involving removal procedure and others suits filed initially in the federal court where the latter had no jurisdiction. They hold that the federal district court is competent to decide whether or not it has jurisdiction to determine a cause, and that when it has ruled on such issue, the judgment even if erroneous is not a nullity which can be ignored. Rather, it, like other judgments which the court is authorized to render, remains in effect until reversed on appeal or on a writ of error to the proper federal appellate tribunal. See also Chesapeake & Ohio Railroad Company v. McCabe, 213 U.S. 207, 29 S.Ct. 430, 53 L.Ed. 765. We are in accord with such holdings.
Moreover, as a matter of comity, it appears to us that the courts of this state should refrain (as the district court and the Court of Appeal did here) from upholding their jurisdiction over that of the federal courts with respect to a given subject matter already the subject of decrees of the latter courts. Our court system should not be used as an instrument to circumvent orders and decrees of a federal court in a controversy in which the latter has already asserted its jurisdiction. Any other course, if pursued regularly, will set the state and federal courts into continuous and chaotic conflict; and it will place litigants as well as the district judges of this state in an obviously untenable, if not impossible, position, such as would result in the present case if we were to order the district judge herein (and ultimately the defendants) to defy the presently existing orders of the federal court.
In conclusion we deem it pertinent to observe that the foregoing considerations prompted our denial of certiorari and mandamus in the case of Houye v. St. Martin Parish School Board, 255 La. 486, 231 So. 2d 397. That case (as pointed out by relators in their application for certiorari and mandamus in this cause) presented the same issues as are involved here. Our reexamination of the issues has convinced us of the correctness of our ruling therein.
For the reasons assigned the writs heretofore issued by us herein are recalled, and the petition of relators is dismissed at their costs.
SUMMERS, Justice (dissenting).
In its decision today the Court recognizes, as it must, the invalidity of the removal proceedings. The reasons for this invalidity are detailed in my dissent to the refusal to grant writs in Houeye v. St. Martin Parish School Board, 255 La. 486, 231 So. 2d 397 (1970). In fact, the failure to comply with the removal statute (28 U.S.C. §§ 1441, 1446) is conceded by the Federal judge who issued the order and by counsel for the United States in these proceedings.
A perfunctory argument is made that the removal is warranted under the "all writs" statute (28 U.S.C. § 1651) and the injunction statute (28 U.S.C. § 2283), but the fallacy of this argument, which is plain, is also set forth in my dissent in the Houeye Case.
The majority, however, is undeterred by these obvious shortcomings in the position of the United States, so it finds that the Federal court may determine whether it has jurisdiction in this case, and that that is what was done; hence, it is held, this decision may not be challenged in the State court by a contention that removal by the Federal court is void, the proper redress being an appeal of the Federal District Court decision to a higher Federal court.
It would be vain to dispute the universally acknowledged right of a court to determine whether it has jurisdiction over the subject matter of the cause before it. I do not, and need not, do so here for this is not the issue of this case. What is the issue, however, and what is presented for adjudication today is the equally universally *243 acknowledged principle that the parties may select the forum in which to pursue their litigation where jurisdiction is concurrent in both State and Federal courts as it is in this case. Normally this choice is exercised by the plaintiff when he initiates the suit. Under certain circumstances, invariably carefully delineated in the law, the defendant may obtain an order changing the forum selected by the plaintiff. This is the purpose of the removal procedure so carefully outlined in Section 1441 et seq. of Title 28 of the United States Code.
This procedure, however, was unavailable to the United States in these proceedings for it was not a "party" to the proceedings in the State court entitled to exercise the right to a forum change in the litigation instituted by plaintiff there.
In proper removal proceedings all parties find themselves automatically before the Federal court. Here, however, the inability of the United States to satisfy the requirements for removal made it necessary to order the State court parties to intervene in the federal proceedings under penalty of dismissal. An action of this character is without precedent and there is no authority in the law to support it. Rule 24 of the Federal Rules of Civil Procedure does provide for intervention of right and permissive intervention. Nowhere do we find, however, authority to compel intervention involuntarily as was done here.
Furthermore employment of the Rule 24 procedural device of intervention in this case is totally foreign to its conceptual basis. Rule 24 provides a procedure by which "one not made a party can protect himself from being excluded from an action which might be detrimental to him, or from an action when he might be able inexpensively to litigate his claim." Wright, Federal Courts § 75. Since removal would not serve its purposes the government has found itself obliged to engraft a "new intervention procedure" to a "new removal procedure" to get the litigants into Federal court.
And the "all writs" statute (28 U.S.C. § 1651) does not provide a vehicle for removing a case on the initiative of outsiders who are not parties to the cause sought be removed:
First, removal is a procedure to be employed by the parties defendant in order to select the forum agreeable to the parties; it is instituted independently of the court action and is unrelated to the exercise of the court's jurisdiction. Removal is not a procedure in the nature of a writ available to the court in aid of its jurisdiction or to protect its rulings. Instead, removal is available to a defendant or defendants in order that they may exercise their right to select a forum.
Secondly, the "all writs" statute requires that it be invoked agreeable to "pertinent principles of law." This is a command to adhere to principles already enacted by the Congress, when pertinent. It does not sanction a disregard of the removal statute which is "pertinent" to the facts of the case. The "all writs" statute provides a remedy to the courts when none is available, not a license to disregard prescribed procedure.
In this and related cases the proper procedure would have been injunction, a writ available to the courts to maintain, and in aid of, their jurisdiction (28 U.S.C. § 2283). Injunction permits a stranger to the State court proceeding to halt its progress; however, injunction would not have, and could not have, obliged the State court plaintiffs to litigate in Federal court. For these reasons injunction was neither sought nor ordered here and none of the formalities prescribed for injunction were observed.
It should be obvious that what has been done here is to usurp a power not granted by law to compel litigants of all cases of this nature to go into Federal court so that those tribunals may enforce a plan of school desegregation in accordance with their own peculiar concepts. It is an attempt to force plaintiffs into a federal forum *244 the law to the contrary notwithstanding. It is not an adjudication of the issue of jurisdiction because the "parties" were not properly before the court to support any adjudication.
And the reference to comity in the majority opinion is woefully misplaced. If there has been a violation of comity in this case the violation occurred in the Federal court when it arbitrarily and capriciously invoked federal power to oust the State, disrupted the proceedings in progress there and assumed to force plaintiffs to litigate in the Federal court. What is particularly ominous about this proceeding is that the arbitrary exercise of power is at the urging of the Federal Government.
We cannot serve the cause of orderly judicial proceedings by sanctioning illegality; we cannot serve the cause of State-Federal relations by approving the arbitrary exercise of power by one system in defiance of the rights of the other; we cannot serve the cause of a viable federalism by permitting the Federal courts to degrade, humiliate and disparage the State courts, and last, but not least, we must grant litigants their rights as the law establishes those rights in order to uphold the American ideal of justice under the law.
I respectfully dissent.
SANDERS, J., dissents for the reasons assigned by SUMMERS, J.
BARHAM, J., dissents.

ON REHEARING
TATE, Justice.
The plaintiffs sue in state court to enjoin their parish school board from implementing a reorganization of the school system previously ordered by the United States District Court, Western District of Louisiana, in Boudreaux v. St. Mary Parish School Board, 303 F.Supp. 394.[1] The United States obtained an order from the federal court removing the present state suit to it and consolidating it with the earlier federal Boudreaux case.
We granted certiorari to review the action of the state district court. The latter had found itself divested of jurisdiction by the federal removal order. It therefore vacated a hearing on the prayer for an injunction.
The plaintiffs-relators contend the state court erred in deferring to the federal removal, arguing that the federal court was without jurisdiction to order it and that its judgment doing so is a nullity.
In our original opinion we held that, whatever the merits of the plaintiffs' complaints as to the allegedly illegal removal, we could not consider them: The federal judgment rejecting these complaints had become final and constituted res judicata barring collateral attack, because the plaintiffs had failed to appeal or otherwise seek review of such adverse ruling.
We granted rehearing in view of the strong arguments that we erred in our original decision. The plaintiffs earnestly insist that the removal was null because the petitioner for removal (the United States) is not a party to the state proceeding. Therefore, it is argued, the authorities relied upon in our original majority opinion are distinguishable.
In our original opinion we have set forth in detail the facts relating to this litigation. *245 Pertinently for present purposes, they show:
After the United States secured from the federal court an order removing the plaintiffs' state injunction suit to it, the plaintiffs filed in federal district court a motion to remand the case to state court. The bases of this motion were the identical contentions presently raised as a basis for this court to ignore the federal removal action: that the action had not been properly removed to federal court; that the procedural steps required for removal by 28 U.S.C. § 1441 et seq. had not been complied with; and that the federal court was without jurisdiction over the action and had no authority to vacate the order for the state court hearing.
At a hearing on the plaintiffs' motion to remand, the federal court rejected the plaintiffs' demand. It also ordered them to intervene in the federal suit. After further contradictory motion,[2] the federal court ordered the state court suit to be dismissed.
The plaintiffs did not appeal from, nor otherwise seek review of, the orders and judgments of the federal court. The federal court's final judgment of dismissal is no longer appealable, nor is any contention made to the contrary.
In contending that the federal court had no authority to order removal of the present state suit to it, the plaintiffs rely upon jurisprudence to the following effect: The right to remove a cause from a state court to a federal court is a statutory right. It may be asserted only by the defendant or defendants and is strictly construed. The party seeking to assert the right must show that he comes clearly within the provisions of the removal statute, with all doubts to be resolved against removal.
Essentially, the plaintiffs rely upon the circumstance that the United States was not a defendant to the state court suit and therefore had no right to remove it to the federal court under 28 U.S.C. § 1441 et seq., the statutory authorization upon which removal of a state court action to federal court is usually based.[3]
The United States does not, however, rely upon this statute as authority for its removing the case to federal court. Instead, it relies upon the All Writs Act, 28 U.S.C. § 1651(a).[4] In this connection, it points out that the purpose of relators' state court action is to block implementation of the federal court desegregation order in the Boudreaux case. The United States cites jurisprudence to the effect that such Act is an independent source of authority under which the federal courts can issue writs and fashion procedures necessary to protect their own jurisdiction.[5]
*246 We are unable to consider these opposing contentions, for we adhere to our original determination that the prior federal ruling that this suit was properly removed has become definitive and is now res judicata.
The object of the demand sought to be enforced here by these state proceedingsthat the federal court was without authority to order the removal of this state court suit to ithas been previously decided by final judgment in the federal proceedings to which the present litigants were parties. This judgment has become definitive due to the failure of the plaintiffs to appeal it or seek other direct review. Res judicata therefore precludes collateral state attack upon this prior federal judicial determination of the question. See City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958).
As we noted in our original opinion, a long-settled and unbroken line of decisions so holds:
A federal court is competent to decide whether or not it has jurisdiction of a case sought to be removed to it from state court; its determination, even if erroneous, is not a nullity. Dowell v. Applegate, 152 U.S. 327, 14 S.Ct. 611, 38 L.Ed. 463 (1894); Des Moines Navigation & R. Co. v. Iowa Homestead Co., 123 U.S. 552, 8 S.Ct. 217, 31 L.Ed. 202 (1887). If a federal court rejects a motion to remand a state proceeding removed to it, and its final judgment is not appealed, the federal judgment in the removed suit is conclusive upon the parties to it; this judgment is a bar to further proceedings in the state court. Chesapeake & Ohio R. Co. v. McCabe, 213 U.S. 207, 29 S.Ct. 430, 53 L.Ed. 765 (1909). See also Baldwin v. Iowa State Traveling Men's Ass'n., 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931).[6]
The plaintiffs seek to evade the force of these authorities by attempting to distinguish them. They point out that none of them concern instances where the party who removed the suit was not a party to the state suit as initially filed.
The important criteria for res judicata, however, does not concern this circumstance but, instead, whether there was an identity of parties in the federal proceedings, including to the decision of the motion to remand filed there by the present plaintiffs.
All of the parties to this present state suit (i. e., the plaintiffs, the United States, the defendant school board) were also parties to the decision and determination in federal court of the motion to remand filed there by the present plaintiffs. At the same time, the juridical facts asserted as cause or cause of action were the same as now (i. e., the allegedly improper removal, and the federal court's lack of jurisdiction to order it). Likewise, the object of this demand (the thing demanded) is the same at this stage in this state suit as that sought in the federal remand hearing (i. e., a declaration that the federal court was without authority to consider as valid the removal of the state court suit to it).
The prior federal judgment of dismissal, resultant from the federal court's denial of the plaintiffs' motion to remand, is now a definitive judgment, since not appealed and no longer appealable, Louisiana Civil Code Article 3556(31). Since the requisite identities *247 of (a) parties, (b) cause or cause of action, and (c) object of the demand (the thing demanded) are present between the present state proceeding and the prior federal determination, such latter determination has acquired the authority of the thing adjudged, i. e., is res judicata. Civil Code Article 2286; Quinette v. Delhommer, 247 La. 1121, 176 So.2d 399 (1965); Quarles v. Lewis, 226 La. 76, 75 So.2d 14 (1954).
This federal ruling is thus conclusive upon the parties to it. It now bars the plaintiffs from raising again before this court the identical demands previously rejected by such ruling.
For the reasons assigned, therefore, we adhere to our previous opinion. The writs previously issued by this court are recalled, and the plaintiffs-relators' petition is dismissed at their cost.
Writs recalled, and petition dismissed.
SANDERS, Justice (concurring).
I am of the view that the removal procedure followed in this case was clearly unauthorized. Further consideration, however, has convinced me that the judgment of the U.S. District Court dismissing the suit is now conclusive, since no appeal was taken from that judgment.
For the reasons assigned, I concur.
BARHAM, Justice (dissenting).
The majority has pointedly stated, and correctly so, that the United States[1] relies exclusively on the All Writ Act, 28 U.S.C. § 1651(a), and on whatever power a district court derives therefrom, as authority for transferring or removing to the federal court a case pending in the state court to which the United States was not even a party and of which the federal court had no vested jurisdiction.
However, after the majority notes that the United States does not rely upon the removal statute, 28 U.S.C. § 1441, every authority cited by it arises, and its entire decisional basis stems, from that removal statute or its statutory source. All of the cases cited are merely authority for holding that an attempted removal under 28 U.S.C. § 1441 gives the federal court the right to make a jurisdictional determination which, when final, is res judicata.[2]
No authority is cited, no legal principle enunciated, that the so-called "all-writ" power under 28 U.S.C. § 1651 gives authority for rending from a state court, through a motion for removal, a suit in which the mover was not a party and of which there is no prior jurisdiction over the parties or the suit. The majority opinion appears to surround the all-writ statute with an aura of great supremacy. To the contrary, that statute has no greater dignity than any other legislation providing for federal court procedures.
The federal court power to issue writs in aid of its jurisdiction is a restrictive provision, and it "* * * does not enlarge or expand the jurisdiction of the [federal] *248 courts but merely confers ancillary jurisdiction where jurisdiction is otherwise granted and already lodged in the court * * *." 36 C.J.S. Federal Courts § 14; 36A C.J.S. Federal Courts § 311. (Emphasis here and elsewhere supplied.) Its limited purpose is to afford for the protection of vested jurisdiction historic procedural aids which are not specifically granted by statute but which are not in conflict with present federal statutes, and which are in conformity with and "agreeable to the usages and principles of law". "The general authorizing statute operates only as an incident to jurisdiction, and gives the federal courts no power to issue such writs until its jurisdiction has otherwise attached. * * *" 36 C.J.S. Federal Courts § 14; Thompson Products v. National Labor Rel. Board, 133 F.2d 637 (C.C.A. 6th 1943); United States v. Spadafora, 207 F.2d 291 (C.C.A. 7th 1953).
The power may be used only in the absence of a contrary procedural statute, and it is certain that it cannot be exercised in a manner forbidden by specific statute (28 U.S.C. § 1441) which has been enacted subsequently to the writ statute. Thompson Products v. National Labor Rel. Board, supra.
Removal procedure has never been used to protect jurisdiction or confer ancillary jurisdiction. Removal is not a procedure designed for the protection of a court's jurisdiction. It is a procedural device for the protection of parties defendant who are entitled to, and wish to avail themselves of, federal jurisdiction. A determination by a federal district court that it may extirpate from a state court the parties plaintiff and defendant and force them to trial in the federal court under its all-writ power when there was no previous jurisdiction is illegal, invalid, void ab initio, and not entitled to recognition in a state court. The federal court's determination of jurisdiction and its adjudication under these bizarre proceedings are not res judicata.
Comity is reciprocal. Federal courts are obligated to respect state jurisdiction, and the employment of legal procedures interposing federal jurisdiction should be considered stricti juris. The Sixth Amendment to the United States Constitution obligates all courts, all judgesstate and federal, to uphold the laws of this nation. We cannot defer, under comity or under the apprehension of a confrontation between state and federal courts, to a judicial act in a federal court which is null and of no effect. The following legal principles are applicable to the determination of this case:
(1) A federal court cannot exercise its writ power without prior jurisdiction.
(2) The writ statute cannot be utilized in the face of later comprehensive and specific statutory prohibition.
(3) The writ power cannot be exercised in an illegal manner, nor can a procedural device not within the contemplation of that power be employed.
(4) The court's writ power is restrictive, is not a new grant of judicial power, and does not expand or enlarge jurisdiction.
(5) Decisions giving effect to jurisdictional determination under 28 U.S.C. § 1441 are inapplicable to this usurpation of jurisdiction in derogation of positive law.
For these reasons I am of the opinion that the federal court's order of removal and its further order that the parties plaintiff in this suit intervene in another federal suit are absolute nullities, not binding upon the parties to this suit, not entitled to be respected as a determinative and definitive judgment in another court, and not res judicata.
I respectfully dissent.
SUMMERS, Justice (dissenting).
It is incorrect for the majority to say on rehearing that "The United States does *249 not, however, rely upon this statute (The Removal Statute, 28 U.S.C. 1441 et seq.) as authority for its removing the case to federal court" (Parenthesis added.) when the prayer of the "Petition for Removal and Consolidation" implores the Federal District Court for an order "Removing to this Court the case of John L. Swope, et al. v. St. Mary Parish School Board, as provided by Title 28 U.S.C. §§ 1441, 1443 and 1651."
The United States, finding its position untenable under Section 1441 et seq. of Title 28 of the United States Code has, contrary to the opinion on rehearing, deemphasized that approach and now relies principally upon the All Writs Act, 28 U.S. C. § 1651(a).
Finding reliance upon the All Writs Act to be equally without merit, the majority in an effort to sustain the position of the United States has erroneously resorted to res judicata in a case where the judgment in question is rendered by a court before whom the case was never properly lodged. Thus the Court sanctions and upholds this invidious bussing plan disrupting the settled program of school attendance of the children of St. Mary Parish and compelling an unnecessary and inordinate expenditure by the taxpayer to meet its requirements.
I cannot understand this reaching out beyond the law by the Federal Judge or this Court. As a result of this and like edicts a generation of young people of the South become the victims of an egalitarian, social experiment, denying them a fundamental freedom of choice. The whole concept is based upon an abuse of power by willful men in the judiciary to which I cannot subscribe.
NOTES
[1] The reorganization plan is attacked as illegal and unconstitutional. The merits of this litigation are not before us; nor could they be, since the only issue here is whether the state proceedings have been finally removed to the federal tribunal, because of the failure of the relators to appeal timely from adverse rulings there. If the removal is final (as we hold), we must affirm the action of the trial court. If the removal were not final, then the only action open to this court is to remand for trial on the merits.
[2] This was opposed by appearance by the plaintiffs through counsel. They argued that the federal court had no right to compel it to intervenea contention identical to one presently urged as a ground for stating that the federal court lacked jurisdiction to dismiss the present suit.
[3] It is not substantially disputed that, if the case had been removed under this statute, then the state court would thereby have been divested of jurisdiction. See 28 U.S.C. § 1446(e); State ex rel. Gremillion v. NAACP, 90 So.2d 884 (La.App. 1st Cir., 1956); Lowe v. Jacobs, 243 F.2d 432 (C.A.5, 1957); Moore's Federal Practice, 0.146 [4]. Whether a case has been properly removed under these provisions is now a matter for the federal court alone to determine.

However, as the plaintiffs-relators correctly point out, the present case was not removed to federal court by authority of this statute. Therefore we are not necessarily bound by the statutory provision to the effect that the state courts can proceed no further after the case is removed pursuant to this federal statute.
[4] 28 U.S.C. § 1651(a) provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."
[5] Harris v. Nelson, 394 U.S. 286, 299-300, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969); Price v. Johnston, 334 U.S. 266, 282, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948).
[6] These rulings occurred prior to the 1948 revision of the statutory regulation of federal removal made by 28 U.S.C. § 1441 et seq. Prior to this 1948 revision, the lines of demarcation between state and federal jurisdiction in removal proceedings were unclear, and a state court did not necessarily have to yield to a removal to federal court made by a party to a state court action. See Moore's Federal Practice 0.168 [2]. (Removal Practice Prior to the Code of 1948). As the decisions above cited show, however, even under this scheme of statutory regulation a failure to appeal or seek other direct federal review of an improper removal judgment concluded the parties to the state suit from collateral attack upon the final federal judgment in the suit as removed to federal court.
[1] The Justice Department of the United States filed a motion for removal of this suit into the Federal District Court for the Western District of Louisiana. The government was not a party, plaintiff or defendant, and was not an intervenor in this suit.
[2] The following cases, the only ones relied upon in the majority opinion, hold only that a federal court determination of jurisdiction under the removal statute is res judicata, and are not apposite to a determination of whether there has been a divesting of state jurisdiction under an illegal exercise of the court's writ power: Des Moines Nav. & R. R. Co. v. Iowa Homestead Co., 128 U.S. 552, 8 S.Ct. 217, 31 L.Ed. 202 (1887); Dowell v. Applegate, 152 U.S. 327, 14 S.Ct. 611, 38 L.Ed. 463 (1894); Chesapeake & Ohio R. Co. v. McCabe, 213 U.S. 207, 29 S.Ct. 430, 53 L.Ed. 765 (1909); Baldwin v. Traveling Men's Assn., 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244, 1245 (1931). We note also that Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958), is inapposite; it is merely a holding that Congress may declare by statute what constitutes finality of a judgment.