Dear Ms. Taylor:
The Concordia Parish Library Board (the Board) is considering a new employment policy, prompted by the following incident, which we restate from your correspondence. Recently, library staff caught a male youth (age thirteen) printing pornographic material from the library's internet resources. The material printed at the library central desk, and library staff denied the youth the documents. He became angry at the refusal, and began to verbally abuse the staff, at which point library personnel called the police. Library staff gave statements to the police concerning the incident; however, the same library personnel refused the police officer's request to sign the police report.
In your letter you state "the police will not document anything unless the police report is signed."
 Your specific question is: May the Board create a policy that requires library personnel to sign a police report if they witnessed an incident in the library?
In other words, you ask if the Board may adopt a policy which states that, as a condition of their employment or continued employment, library employees are required to cooperate with law enforcement officials in any investigation related to incidents occurring on library property. This policy would further provide that an employee's refusal to fully cooperate with the police officer's reasonable requests (which would include the scenario considered here) may result in disciplinary action, including possible termination.
The Board is empowered to adopt employment policies concerning library staff, including the proposed policy. Pursuant to R.S. 25:215, the Board is given the exclusive authority to hire its employees, and to establish rules and regulations governing such employment. R.S. 25:215(A) states "the board of control shall *Page 2 
have authority to establish rules and regulations for its own government and that of the library not inconsistent with law; to elect and employ a librarian, and upon the recommendation and approval of the latter, to employ assistant librarians and other employees and fix their salaries and compensation. . ."
However, with or without such an employment policy, unclassified library personnel who are hired for an indefinite period are considered "at will" employees and may be discharged without cause. Where an employee's job is for an indefinite term, the employment is terminable at will of either the employer or the employee. Absent a specific contract or agreement establishing a fixed term of employment, an employer is at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge. Williams vs. Delta Haven,Inc., 416 So.2d 637 (La.App. 2d Cir. 1982). See also C.C. Article 2747
states:
 Art. 2747. Contract of servant terminable at will of parties
 A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause.
Note further Louisiana jurisprudence which reflects that a governmental employer may discharge an unclassified employee without cause. Jacksonv. East Baton Rouge Parish Indigent Defender's Board, 353 So.2d 344
(La.App. 1st Cir. 1977). Police jury employees are "unclassified" civil servants who may be discharged without cause. La.Const, Art. X § 2(B)( 10); Lague v. St. Charles Parish Police Jury, 363 So.2d 1240, 1241
(La.App. 4th Cir. 1978) (unclassified employees terminable at will);Cherry v. Office of Criminal Sheriff, 454 So.2d 293, 295 (La.App. 4th
Cir. 1984) (unclassified employees work "at the discretion" of the police jury).
Thus, while the Board may adopt the employment policy proposed, an unclassified library employee, as an "at will" employee, may be discharged from employment at any time without cause, whether or not the Board actually adopts such policy in the future.
Of course, as a matter of public policy, it is the goal of state and federal law to encourage voluntary witness cooperation with law enforcement in the investigation and prevention of criminal activity. To that end, the United States Supreme Court has concluded that all witnesses, including police officers and lay witnesses, are absolutely immune from civil liability based on their testimony in judicial proceedings. See Biscoe v. LaHue, 460 U.S. 325, 103 S.Ct. 1108,75 L.Ed.2d 96 (1983) Quoting Calkins v. Sumner, 13 Wis. 193, 197 (1860), the Court in Briscoe explained the policy behind witness immunity as follows: *Page 3 
 The claims of the individual must yield to the dictates of public policy, which requires that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible.
Without such immunity, witnesses might be reluctant to come forth to testify and, additionally, their testimony might be distorted by fear of subsequent liability.
The same general rule is followed in Louisiana concerning witness immunity. The Louisiana Supreme Court has held "there is absolute immunity from civil liability for testimony given by a non-party witness in a judicial proceeding, so long as that testimony is pertinent and material to the issue." See Marrogi v. Howard, 802 So.2d 1118 (La. 2002).
Note further that R.S. 14:50 is entitled "absolute privilege" and states that there shall be no prosecution for defamation "when a statement is made by a witness in a judicial proceeding, or in any other legal proceeding where testimony may be required by law, and such statement is reasonably believed by the witness to be relevant to the matter in controversy." See R.S. 14:50(2).
While the Board may adopt the proposed policy, as discussed, it is suggested a better result may be achieved by informing library personnel of their immunity from civil liability for testimony given in a judicial proceeding.
We hope the foregoing is helpful to you. Should you have other questions in which we may provide assistance, please contact this office.
Very truly yours,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 BY:__________________________
 KERRY L KILPATRlCK
 ASSISTANT ATTORNEY GENERAL
 KLK:arg